UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

TAMMY KIDWELL, *et al.*                    CIVIL ACTION

VERSUS                                      NO. 18-2052

RUBY IV, LLC, *et al.*                      SECTION: M (5)

**ORDER & REASONS**

Before the Court are: (1) a motion for class certification filed by plaintiff Tammy Kidwell ("Kidwell"), on behalf of herself and all others similarly situated,[1] to which defendants Ruby IV, LLC, Ruby Enterprises, LLC, Ruba Development Manager, LLC, Ruby Management, Inc., Ruba, LLC, Ruba II, LLC, Ruba III, LLC, Ruby V, LLC, Ruby VII, LLC, Ruby I.X., LLC, Ruby X, LLC, Ruby XI, LLC, Ruby XII, LLC, Ruby XIV, LLC, Nadia Esmail, and Mohammad Esmail (collectively "Defendants") respond in opposition,[2] and in further support of which Kidwell replies;[3] and (2) Kidwell's motion to strike the affidavits of Ahmad Elaal ("Elaal") and Khalid Sharaf ("Sharaf"),[4] to which Defendants respond in opposition.[5] Having considered the parties' memoranda and the applicable law, the Court issues this Order & Reasons.

I.    **BACKGROUND**

This case arises out of Kidwell's employment with Defendants as a restaurant manager, hostess, cook, and waitress at Defendants' International House of Pancakes ("IHOP") restaurants.[6] Kidwell brings this action, individually and on behalf of all other similarly-situated individuals, against Defendants asserting violations of the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §§

---

[1] R. Doc. 67.
[2] R. Doc. 90.
[3] R. Doc. 94.
[4] R. Doc. 95.
[5] R. Doc. 99.
[6] R. Doc. 20.

201, *et seq.*[7]   Kidwell alleges that Defendants operate a network of IHOP restaurants as an "enterprise engaged in commerce" within the meaning of the FLSA, by utilizing common management, personnel, ownership, financial controls, labor relations, personnel policies, personnel records, payroll, and insurance programs.[8]

Kidwell alleges that Defendants failed to properly pay her wages and those of similarly-situated employees.[9]   Specifically, she alleges that Defendants did not pay her a guaranteed salary of at least $455.00 per week when she worked as a restaurant manager, but instead paid her an hourly rate of $12.00 per hour and often failed to pay her one-and-one-half (1 ½) times her regular rate of pay for hours worked in excess of forty (40) in a workweek.[10]   Kidwell also alleges that Defendants did not properly track workers' hours, which resulted in employees not being "paid their straight-time rate of pay for many hours that they were required to work 'off the clock.'"[11] Further, Kidwell alleges that Defendants failed to pay her overtime wages for hours worked in excess of forty (40) per week when she worked as a restaurant manager, cook, and hostess.[12]

Additionally, Kidwell alleges that Defendants failed to properly pay her wages when she worked as a waitress.[13]   Kidwell claims that Defendants "would inflate the amount of tips that [she] was reported to receive so that it would appear that she was earning the federal minimum wage of $7.25/hour for hours under forty in a workweek and the minimum overtime rate of $10.88 for hours worked over forty in a workweek, even when her actual tips fell below this amount."[14] According to Kidwell, she and other servers "did not always earn $7.25/hour for hours under 40

---

[7] R. Doc. 20 at 1-10.  Kidwell also brings an individual claim against Defendants under the Louisiana Wage Payment Act ("LWPA"), La. R.S. 23:631, *et seq.*, alleging that Defendants failed to timely pay her wages due after her termination.  R. Doc. 20 at 10.

[8] *Id.* at 5-6.

[9] *Id.* at 6-10.

[10] *Id.* at 6.

[11] *Id.*  Kidwell also alleges that the failure to pay employees for hours worked "off the clock" violated the LWPA.  *Id.* at 7.

[12] *Id.* at 6.

[13] *Id.* at 7.

[14] *Id.*

in a workweek and the minimum overtime rate of $10.88 for hours worked over forty, even with the tips they received."[15]

Kidwell seeks to represent two classes of workers pursuing FLSA claims against Defendants: (1) "individuals to whom Defendants did not pay overtime compensation for hours worked over forty in a workweek, including hostesses, managers, and other hourly workers (collectively referred to as the 'Overtime FLSA Collective')"; and (2) "other servers who were not paid $7.25/hour for hours under 40 and the minimum overtime rate of $10.88 for hours worked over forty (the 'Server FLSA Collective')."[16]   Kidwell claims that the workers in the Overtime FLSA Collective, and those in the Server FLSA Collective, are similarly situated to other workers in the respective classes because "they have substantially similar job requirements and pay provisions, and are subject to Defendants' common practice and policy of unlawfully failing to pay compensation as required by the FLSA."[17]   Kidwell prays for a declaratory judgment finding that Defendants willfully violated the FLSA, an award of unpaid compensation for all class members, attorney's fees, pre- and post-judgment interest, and costs.[18]

## II.   PENDING MOTIONS

On September 19, 2018, Kidwell filed the instant motion for conditional certification of the proposed FLSA classes.[19]   Kidwell seeks conditional class certification of two opt-in classes consisting of: (1) all hourly workers working for Defendants between June 13, 2015, and the present ("the Overtime FLSA Collective"); and (2) all servers (waiters and waitresses) working for Defendants between June 13, 2015, and the present ("the Server FLSA Collective").[20]   Kidwell argues that conditional class certification is appropriate because there are numerous hourly

---

[15] *Id.*
[16] *Id.* at 7-8.
[17] *Id.* at 8.
[18] *Id.* at 10-11.
[19] R. Doc. 67.
[20] *Id*. at 1.

workers and servers employed by Defendants who were treated like she was and were not paid overtime or proper server wages.[21]  Kidwell also seeks an order that: (1) approves her proposed written notice to putative collective action members and her proposed opt-in consent form; (2) permits her attorneys to send written notice and opt-in forms to putative collective action members via first-class mail, email, and text message for a 90-day opt-in period; (3) requires Defendants to produce to her attorneys, in Excel format, the names, last-known addresses, email addresses, telephone numbers, dates of employment, and work locations (by the name of the particular Ruby/Ruba LLC) of all putative collective action members; (4) requires Defendants to post the written notice and consent forms in conspicuous locations at their headquarters and all of their IHOP restaurant locations; and (5) prohibits Defendants and their management from retaliating against any individual who exercises his or her right under the FLSA or opts into this lawsuit.[22]

Defendants argue that Kidwell has not demonstrated that she was similarly situated to the putative collective action members because she was an exempt manager not covered by the FLSA for "a large portion of the relevant time period."[23]  Defendants also argue that Kidwell has not "identified any common policy or practice by which she and the putative opt-in plaintiffs were all aggrieved."[24]  Further, Defendants argue that a 60-day opt-in period is more appropriate than 90 days.[25]  Defendants object to producing the putative class members telephone numbers and to Kidwell's attorneys calling putative collective action members or sending notice to putative collective action members via text message.[26]

---

[21] R. Doc. 67-1 at 2.

[22] *Id.* at 2-3.

[23] R. Doc. 90 at 3-6.

[24] *Id.* at 5.

[25] *Id.* at 6-9.

[26] *Id.* at 9-12.  Defendants also object to having the notice and opt-in forms posted at their places of business for the duration of the action.  *Id.* at 13.  In her reply memorandum, Kidwell states that she does not oppose the Defendants' removing the notice and opt-in forms from display at the end of the opt-in period but asks that the Defendants provide photographic confirmation of the postings at easily visible places accessible to all workers at each IHOP restaurant.  R. Doc. 94 at 16.  Therefore, this issue is moot.

Defendants filed the affidavits of Elaal and Sharaf in support of their opposition to Kidwell's motion for conditional class certification.[27]   Kidwell filed a motion to strike these affidavits arguing that they are not made on personal knowledge or are otherwise permissible under the Federal Rules of Evidence and the Federal Rules of Civil Procedure.[28]   Defendants oppose the motion to strike arguing that the statements made in the affidavits are made on personal knowledge or are based on information obtained by the affiants in their positions of authority within Defendants' organization.[29]

## III.   LAW & ANALYSIS

### A.   Kidwell's Motion to Strike the Elaal and Sharaf Affidavits (R. Doc. 95)

Rule 56(c)(4) of the Federal Rules of Civil Procedure provides that "[a]n affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated."   Similarly, Rule 602 of the Federal Rules of Evidence states that "[a] witness may testify as to a matter only if evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter."   Personal knowledge may be gained through the affiant's job duties.   *Lang v. Direct TV, Inc.*, 2011 WL 6934607, at *9 (E.D. La. Dec. 30, 2011) (citing *Howard v. Securitas Security Servs., USA Inc.*, 2009 WL 140126, at *4 (N.D. Ill. Jan. 20, 2009)).   Questions concerning the affiant's personal knowledge go to the weight to be given to the statements, rather than the admissibility.   *Id*. (citing *Ellington Credit Fund, Ltd. v. Select Portfolio Servicing, Inc.*, 2007 WL 3256210, at *1 (W.D. Tex. Nov. 2, 2007)).

Kidwell argues that the affidavits should be stricken because the affiants were not employed by Defendants for the entire relevant time period and they state irrelevant or prejudicial facts.   However, Kidwell has not established that the information in the affidavits relating to

---

[27] R. Docs. 90-1 & 90-2.
[28] R. Doc. 95.
[29] R. Doc. 99.

periods when the affiants were not employed by Defendants was not obtained by them as a part of their job duties. Accordingly, all of the issues raised by Kidwell go to the weight, rather than the admissibility, of the affidavits. Therefore, Kidwell's motion to strike is DENIED.

### B. Kidwell's Motion for Conditional Class Certification (R. Doc. 67)

#### 1. Conditional Class Certification

An employee may sue an employer for violating the minimum wage and overtime provisions of the FLSA either individually or as a collective action on behalf of himself or herself and "other employees similarly situated." 29 U.S.C. § 216(b). Unlike a class action under Rule 23 of the Federal Rules of Civil Procedure, which requires putative plaintiffs to opt out, a collective action under § 216(b) binds only those employees who affirmatively "opt in" to the suit. *Id.* ("No employee shall be a party plaintiff to any such action unless he [or she] gives his [or her] consent in writing to become such a party and such consent is filed in the court in which such action is brought.").

Courts have taken two different approaches to resolve the issue of whether plaintiffs are similarly situated to a proposed class: the spurious class action approach, which originated in *Shushan v. University of Colo.*, 132 F.R.D. 263 (D. Colo. 1990); and the "two-step" approach, as in *Lusardi v. Xerox Corp.*, 122 F.R.D. 463 (D.N.J. 1988). The Fifth Circuit has yet to adopt either test. However, district courts in this circuit have generally applied *Lusardi*'s "two-step" approach, and this Court will follow that jurisprudence.[30] *See Guidry v. Target Corp.*, 2009 WL 1604591

---

[30] Defendants argue that this Court should apply a "more demanding" level of scrutiny to class certification in this case because the parties have conducted some discovery. R. Doc. 90 at 2-3. In *Nieddu v. Lifetime Fitness, Inc.*, the district court recognized that "[a] number of courts have held that if **substantial** discovery occurs before the first, conditional certification stage, the court may bypass the first stage and proceed directly to the second stage of certification analysis." 977 F. Supp. 2d 686, 692 (S.D. Tex. 2013) (quotations and citations omitted) (emphasis added). Similarly, in *Clay v. Huntington Ingalls Inc.*, the district court, recognizing that a "**substantial** amount of discovery" had been conducted in the case, stated that it can appropriately consider in the exercise of its discretion to certify the collective action whether "that discovery tends to show that trying the claims in a representative fashion is not practical." 2011 WL 13205917, at *5 (E.D. La. Sept. 29, 2011) (emphasis added). In the case at bar, some discovery has been conducted. However, the Court is not convinced that it is a "substantial" amount, and Defendants have not shown how the discovery completed demonstrates that trying the claims in a representative fashion is not practical as to justify short-circuiting the *Lusardi* two-step approach. Thus, "[a]fter review of the arguments and the record, the

(E.D. La. June 5, 2009); *Basco v. Wal-Mart Stores, Inc.*, 2004 WL 1497709, at *4 (E.D. La. July 2, 2004) (the two-step approach "is the preferred method for making the similarly situated analysis").

The *Lusardi* two-step approach consists of a "notice stage" and a "decertification stage." *Mooney v. Aramco*, 54 F.3d 1207, 1213 (5th Cir. 1995), *overruled on other grounds by Desert Palace, Inc. v. Costa*, 539 U.S. 90 (2003).  At the notice stage, the court determines, based only on the pleadings and any affidavits that have been submitted, whether the putative collective action members should receive notice of the action.  *Id.* at 1214.  "Because the court has minimal evidence, this determination is made using a fairly lenient standard, and typically results in 'conditional certification' of a representative class."  *Id.*  "At the notice stage, 'courts appear to require nothing more than substantial allegations that the putative class members were together the victims of a single decision, policy or plan infected by discrimination.'"  *Id.* at 1214 n.8 (quoting *Sperling v. Hoffman-LaRoche, Inc.*, 118 F.R.D. 392, 407 (D.N.J. 1988)).  If the district court finds that the putative collective action members are similarly situated, it conditionally certifies the class and the putative collective action members are given notice and the opportunity to opt in.  *Id.* at 1214.  "The action proceeds as a representative action throughout discovery."  *Id.*

The decertification stage is precipitated when the defendant, after discovery is largely completed and the matter is ready for trial, files a motion to decertify the class.  *Id.*  "At this stage, the court has much more information on which to base its decision, and makes a factual determination of the similarly situated question."  *Id.*  If the district court finds that the claimants are not similarly situated, it decertifies the class and dismisses without prejudice the opt-in plaintiffs' claims, and the class representatives (*i.e.*, the original plaintiffs) proceed to trial on their

---

Court finds no reason to depart from the long-line of precedent finding that *Lusardi* is the preferred method for analyzing motions to certify collective actions under Section 216(b)."  *Xavier v. Belfor USA Grp., Inc.*, 585 F. Supp. 2d 873, 876 (E.D. La. 2008).

individual claims.  *Id.*  On the other hand, if the district court finds that the claimants are similarly situated, it allows the representative action to proceed to trial.  *Id.*

Kidwell seeks conditional certification on behalf of two classes of similarly-situated persons under the notice stage of the *Lusardi* approach.  At this first stage, "a plaintiff must show that: '(1) there is a reasonable basis for crediting the assertion that aggrieved individuals exist; (2) those aggrieved individuals are similarly situated to the plaintiff in relevant respects given the claims and defenses asserted; and (3) those individuals want to opt in to the lawsuit.'"  *Tolentino v. C & J Spec-Rent Servs. Inc*., 716 F. Supp. 2d 642, 647 (S.D. Tex. 2010) (quoting *Morales v. Thang Hung Corp.,* 2009 WL 2524601, at *2 (S.D. Tex. Aug. 14, 2009)).  In conducting this inquiry, district courts have considered whether potential plaintiffs were identified, whether affidavits of potential plaintiffs were submitted, and whether evidence of a widespread discriminatory plan was submitted.  *Lima v. Int'l Catastrophe Sols., Inc.*, 493 F. Supp. 2d 793, 798 (E.D. La. 2007) (citations omitted).  "A plaintiff need only demonstrate a reasonable basis for the allegation that a class of similarly situated persons may exist."  *Id.*

### a.  Existence of Aggrieved Co-Workers

Kidwell presents sufficient evidence that there are other aggrieved co-workers in both the Overtime FLSA Collective and the Server FLSA Collective.  In her affidavit, Kidwell declares that she worked at various IHOP restaurants owned by Defendants' business enterprise as an hourly worker and server and routinely was not paid overtime wages for hours worked in excess of forty (40) hours per week and was not properly paid minimum and overtime wages as a server.[31]  Kidwell supports these statements with her actual payroll records.[32]  Kidwell also submits payroll records from four other hourly workers and six other servers that tend to show that Defendants did not properly pay them overtime and/or minimum wages.[33]  Further, Kidwell presented evidence

---

[31] R. Doc. 67-8 at 2-3.
[32] *Id.* at 4-10; *see also* R. Doc. 67-10.
[33] R. Docs. 67-10 & 67-15.

that the United States Department of Labor ("DOL") found that several of the Defendants violated the FLSA from 2010 to 2014 by failing to properly pay tipped employees and overtime wages to hourly employees.[34]   Although the DOL's findings are for a preceding time period, those findings, along with the payroll data, suggest that there likely exist numerous aggrieved co-workers.

### b. Aggrieved Co-Workers are Similarly Situated to Plaintiff

"[P]otential class plaintiffs are considered 'similarly situated' to the named plaintiffs if they are 'similarly situated' with respect to their job requirements and with regard to their pay provisions." *Tolentino*, 716 F. Supp. 2d at 649-50 (quotation omitted).   "The positions need not be identical, but similar." *Id.* at 650 (quotation omitted).   Moreover, "[w]hether at the notice stage or on later review, collective action certification is not precluded by the fact that the putative plaintiffs performed various jobs in differing departments and locations." *Donahue v. Francis Servs., Inc.*, 2004 WL 1161366, at *2 (E.D. La. May 24, 2004) (citations omitted).   Instead, similarly-situated plaintiffs share some factual nexus which binds them together as victims of a particular alleged policy or practice. *Xavier*, 585 F. Supp. 2d at 878 (quoting *Crain v. Helmerick & Payne Int'l Drilling Co.*, 1992 WL 91946, at *4-5 (E.D. La. Apr. 16, 1992)).   A district court may deny a plaintiff's motion "to proceed collectively only if the action arises from circumstances purely personal to the plaintiff, and not from any generally applicable rule, policy, or practice." *Tolentino*, 716 F. Supp. 2d at 650. (quotation omitted).

In her declaration, Kidwell states that she has worked as a hostess, manager, and waitress at two of Defendants' IHOP restaurants and was not properly paid overtime or minimum wages (as a server) no matter where she worked or what job she performed.[35]   Further, the DOL records indicate that Defendants violated the FLSA's overtime and minimum-wage requirements as to several different types of positions at a variety of locations.[36]   This evidence shows that there is a

---

[34] R. Docs. 67-5 & 67-6.
[35] R. Doc. 67-8 at 2-3.
[36] R. Docs. 67-5 & 67-6.

factual nexus that binds the putative collective action members as being subject to common payroll practices.

Defendants argue that Kidwell is not similarly situated to the putative collective action members because she was a manager exempt from the provisions of the FLSA during at least part of the time encompassed by this action.[37]  As such, Defendants argue that this exemption defense makes this case's proceeding as a representative action improper.[38]  Exemption defenses, which may be individual to each plaintiff, "are more appropriately considered at the second stage of the *Lusardi* inquiry."  *Ramos v. Capitan Corp.*, 2016 WL 8674617, at *3 (W.D. Tex. May 18, 2016) (citing *Mooney*, 54 F.3d at 1213 n.7, 1215-16); *Falcon v. Starbucks Corp.*, 580 F. Supp. 2d 528, 534 (S.D. Tex. 2008).  Notably, "at the conditional certification stage, the court does not resolve factual disputes, decide substantive issues on the merits, or make credibility determinations." *White v. Integrated Elec. Techs., Inc.*, 2013 WL 2903070, at *6 n.21 (E.D. La. June 13, 2013) (quoting *Aros v. United Rentals, Inc.*, 269 F.R.D. 176, 180 (D. Conn. 2010)).  Therefore, at this stage, the Court will not adjudicate the merits of Defendants' exemption defense as to Kidwell, and finds that there is enough evidence that Kidwell is similarly situated to the putative collective action members to allow conditional certification.

### c.  Aggrieved Co-Workers Want to Opt In

Kidwell has made a sufficient showing that other workers would want to opt in to a putative collective action.  On November 14, 2018, counsel for plaintiffs filed into the record a notice of consent to join signed by Tachelle K. Sims.[39]  Considering the lenient standard at the notice stage of the *Lusardi* inquiry, the Court finds that Kidwell has adequately shown that other workers want to join the litigation and that conditional certification of a collective action is appropriate at this time.

---

[37] R. Doc. 90 at 3-6.
[38] *Id.*
[39] R. Doc. 91.

### 2. Opt-In Period

Kidwell seeks an opt-in period of 90 days, arguing that there is high turnover in the restaurant industry and many of the putative class members may have moved.[40]  Defendants argue that 60 days is a sufficient opt-in period, arguing that high-employee turnover in the restaurant industry does not mean that the former employees necessarily moved.[41]  Courts have previously held that a 90-day opt-in period is not prejudicial to the defense.  *See, e.g., Funez v. E.M.S.P. LLC*, 2016 WL 4445828 (E.D. La. Aug. 24, 2016).  The longer opt-in period is appropriate in this case considering that the class involves many IHOP restaurants, which in turn indicates that there could be a large number of potential class members thus enlarging the time it takes to contact each one.

### 3. Producing Telephone Numbers and Counsel's Calling or Sending Text Notifications to Putative Collective Action Members

Kidwell argues that Defendants should be required to produce the putative collective action members' telephone numbers, and that plaintiffs' counsel should be permitted to send a notice of the action via text message that reads:

> If you worked as a server or in any other hourly position for any of the IHOP Restaurants owned and operated by Nadia Esmail and Mohammad Esmail since January 13, 2015, you may be entitled to join a lawsuit claiming back pay and penalties for unpaid wages or overtime.  For information about the case, including how to join, please call the workers' attorneys at 504-308-1438 or email them at chris@williamslitigation.com or Charles@stieglerlawfirm.com.[42]

Kidwell argues that text-message notification is appropriate because it is how most people communicate today.[43]  Defendants argue that text-message notification is unnecessary considering that the notice will be sent via first-class mail and email and displayed at the Defendants' places

---

[40] R. Doc. 67-1 at 23.
[41] R. Doc. 90 at 6-9.
[42] R. Doc. 67-1 at 19-20.
[43] R. Doc. 94 at 15-16.

of business.[44]  Defendants also argue that text-message notification is intrusive and potentially annoying to the potential collective action members.[45]

In several recent FLSA cases district courts have permitted plaintiffs' counsel to send notice to putative collective action members via text message. *See Defrese-Reese v. Healthy Minds, Inc.*, 2019 WL 97042 (W.D. La. Jan. 3, 2019); *Mahrous v. LKM Enterprises, LLC*, 2017 WL 2730886, at *4 (E.D. La. June 26, 2017) (collecting cases).  Text-message notification is particularly appropriate when the employer has previously communicated with the employees via text message or where there is high employee turnover.  *Wingo v. Martin Transp., Inc.*, 2018 WL 6334312, at *10 (E.D. Tex. Dec. 5, 2018) (citing *Butler v. TFS Oilfield Servs., LLC.*, 2017 WL 7052879, at *7 (W.D. Tex. Sept. 26, 2017); *Martin v. Sprint/United Mgmt. Co.*, 2016 WL 30334 (S.D.N.Y. Jan. 4, 2016)).

In this case, Defendants' district manager, Dhiya Esmail, testified at his deposition that he frequently communicated with some employees via text message.[46]  Further, there is high employee turnover in the restaurant industry.  *Bhumithanarn v. 22 Noodle Mkt. Corp.*, 2015 WL 4240985, at *5 (S.D.N.Y. July 13, 2015) ("given the high turnover characteristic of the restaurant industry, the Court finds that notice via text message is likely to be a viable and efficient means of communicating with many prospective members of this collective action").  Considering these factors and the state of modern communication, the Court finds that notification via text message is appropriate here.  However, any text-message notification must attach the Court-approved class notification and opt-in forms along with the following text:

---

[44] R. Doc. 90 at 11.
[45] *Id.*
[46] R. Doc. 94-10 at 4-5.

> If you worked as a server or in any other hourly position for any of the IHOP Restaurants owned and operated by Nadia Esmail and Mohammad Esmail since January 13, 2015, you may be entitled to join a lawsuit claiming back pay and penalties for unpaid wages or overtime.  Please refer to the attached collective action notification form.

### 4.   Kidwell's Proposed Written Notice to Putative Collective Action Members and Proposed Opt-In Consent Form

Kidwell submitted a proposed notice to putative collective action members and a proposed opt-in consent form.[47]  Defendants did not raise any specific objections to the content of either proposed form.  The notice is based on the model Class Action Notice available on the Federal Judicial Center website.[48]  It is within the district court's discretion to determine whether the notice gives accurate and timely notice of the collective action to allow the potential class members to make informed decisions about whether to participate.  *Escobar v. Ramelli Grp., L.L.C.*, 2017 WL 3024741, at *3 (E.D. La. July 17, 2017) (citing *Hoffman-La Roche Inc. v. Sperling*, 493 U.S. 165, 170 (1989); *Whitehorn v. Wolfgang's Steakhouse, Inc.*, 767 F. Supp. 2d 445, 450 (S.D.N.Y. 2011)).

The Court has reviewed the proposed notice and finds that it adequately apprises potential plaintiffs of their rights.  However, the Court finds that several changes are necessary to clarify the notice:

(a)  The first paragraph under "NOTICE OF COLLECTIVE ACTION LAWSUIT" shall be replaced with the following:

> TO:   All servers (waiters/waitresses) and hourly workers, including hostesses, managers, and other hourly positions, working at an International House of Pancakes ("IHOP") restaurant owned by one or more of the Defendants (listed in the caption above) between June 13, 2015, and the present.

---

[47] R. Doc. 67-4.
[48] http://www.fjc.gov/.

(b) The paragraphs in the section "Why Are You Getting This Notice?" shall be replaced with the following:

> You received this Notice because the Court presiding over this lawsuit has approved this Notice to be sent to all persons who worked as servers or hourly workers, including hostesses, managers, and other hourly positions, for any of the IHOP restaurants owned and operated by the Defendants (listed in the caption above).

> The Court has conditionally certified a collective action that may affect you. This Notice is intended to advise you of how your rights under the Fair Labor Standards Act ("FLSA") may be affected by this lawsuit and describe how to participate in the suit if you want to do so.

(c)   The paragraphs in the section "What Is This Lawsuit About?" shall be replaced with the following:

> Plaintiffs allege that Defendants (listed in the caption above) failed to pay the minimum and/or overtime wages owed to servers and hourly workers as required by the FLSA. Plaintiffs seek liquidated damages equal to their allegedly unpaid minimum and/or overtime wages.

> Defendants deny Plaintiffs' allegations. Defendants contend that they properly paid Plaintiffs, and the other potential class members, and do not owe them any amount for unpaid minimum and/or overtime wages.

> At this stage, the Court has not ruled on the merits of the case, but has authorized this Notice to inform you of your right to join in this lawsuit if you are eligible as described below.

(d)   The paragraphs in the section "What Are Your Options?" shall be replaced with the following:

> If you are eligible to join in this lawsuit (as described above), you may do so by signing the attached consent form and returning it to Plaintiffs' counsel in the enclosed self-addressed stamped envelope, faxing it to 504-308-1446, or emailing it to chris@williamslitigation.com or charles@stieglerlawfirm.com, on or before **[90 days from the date that the Notice is mailed]**. However, you are not required to join this lawsuit.

(e) The first paragraph in the section "Effect of Joining or Not Joining the Lawsuit" shall be replaced with the following:

> If you send the consent form to Plaintiffs' counsel on or before **[90 days from the date that the Notice is mailed]**, you will be a part of this case. Therefore, if the Plaintiffs who filed this case win or settle the case, you may receive additional money from the Defendants (listed in the caption above). If the Plaintiffs who filed this case lose the case, you will not receive anything and will be bound by the Court's decision, but you will not have to pay anything either.

(f) The paragraphs in the section "Defendants Cannot and Will Not Fire You for Joining this Lawsuit" shall be replaced with the following:

> Federal law prohibits Defendants (listed in the caption above) from firing, retaliating, or discriminating against you because you join this lawsuit. If you join this lawsuit and are fired or suspect any retaliation or discrimination, you may choose to hire your own attorney, or you may be represented by Plaintiffs' attorneys (contact information listed below) to address those issues.

(g) The last paragraph in the section "Your Legal Representation if You Join" shall be amended to name the Defendants' attorneys currently enrolled in this case.

## IV.    CONCLUSION

Accordingly,

IT IS ORDERED that Kidwell's motion to strike the Elaal and Sharaf Affidavits (R. Doc. 95) is DENIED.

IT IS FURTHER ORDERED that Kidwell's motion to conditionally certify the class (R. Doc. 67) is GRANTED.

IT IS FURTHER ORDERED that pursuant to 29 U.S.C. § 216:

A.     The classes are conditionally certified as:

(1) All hourly workers working for the Defendants between June 13, 2015, and the present, to whom Defendants did not pay overtime compensation for hours worked over forty (40) in a workweek, including hostesses, managers and other hourly workers (collectively referred to as the "Overtime FLSA Collective"); and

(2) All servers (waiters/waitresses) working for the Defendants between June 13, 2015, and the present, who were not paid $7.25/hour for hours worked under forty (40) in a workweek and/or the minimum overtime rate of $10.88 for hours worked over forty (40) in a workweek (the "Server FLSA Collective").

B.      Within fourteen (14) days of the date of this Order & Reasons, Defendants shall provide to plaintiffs' counsel, in Excel format, the names, last-known addresses, email addresses, telephone numbers, dates of employment, and work locations (by the name of the particular Ruby/Ruba LLC) of all putative collective action members;

C.      Kidwell's proposed written notice to putative collective action members and proposed opt-in consent forms are approved with the changes indicated above.  Counsel for plaintiffs shall submit to the Court within five (5) days of the date of this Order & Reasons for final approval a revised proposed written notice that incorporates the changes.

D.      Counsel for plaintiffs shall have thirty (30) days from the date that the Court approves the revised proposed written notice to transmit the notice and consent forms to the putative collective action members via first-class mail, email, and text message.

E.      Opt-in plaintiffs are granted a period of ninety (90) days from the date that the notice and consent forms are mailed to return their signed consent forms to plaintiffs' counsel via mail, email, fax, or electronic signature service.

F.      Defendants shall post the written notice and consent forms in conspicuous locations at their headquarters and all of their IHOP restaurant locations during the 90-day opt-in period; and

G.      The Defendants and their management are prohibited from retaliating against any individual who exercises his or her right under the FLSA or opts into this lawsuit.

New Orleans, Louisiana, this 16th day of January, 2019.

BARRY W. ASHE
UNITED STATES DISTRICT JUDGE