UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

TAMMY KIDWELL, ET AL.                          CIVIL ACTION

VERSUS                                         NUMBER: 18-02052

RUBY IV, L.L.C., ET AL.                        SECTION: "M"(5)

**ORDER, REASONS, AND RECOMMENDATION**

Before the Court are two motions for sanctions filed by Plaintiffs.  (Rec. docs. 361, 496).  Defendants filed opposition memoranda to each (rec. docs. 369, 498) and Plaintiffs filed reply memoranda.  (Rec. docs. 384, 501).  Defendants also filed a "supplemental" opposition memorandum to the first of Plaintiffs' motions.  (Rec. doc. 377).

Having now closely reviewed these pleadings and the associated exhibits and having lived through the years-long fiasco that has been discovery in this matter, the Court rules on the motions as follows.

**I.     The First Motion for Sanctions**

Plaintiffs' first motion seeks monetary and other sanctions against Defendants for a host of transgressions dating back to the earliest days of this litigation.  It was filed after this Court issued an order granting as unopposed an earlier motion to compel filed by Plaintiffs.  (Rec. doc. 332).  In that order, dated March 4, 2020, the Court ordered Defendants to make a supplemental production they had previously (and repeatedly) agreed to make and further stated "Plaintiffs may brief the Court on the type and amount of sanctions that may be

properly imposed in this matter commensurate with the extent of Defendants' compliance with this order."[1] (*Id.*).

Defendants filed a motion to reconsider that order, arguing they had made an "inadvertent calendaring mistake, to their utmost chagrin" but that such mistake was not an indication of disrespect to the Court or their opponents. (Rec. doc. 333). After a telephonic hearing on that motion, the Court ordered Defendants – again – to produce the re-formatted b-50 reports they had previously agreed to produce no later than March 30, 2020. (Rec. doc. 336).[2]

The first pending motion for sanctions (the one contemplated by the Court's aforementioned March 4, 2020 order), was filed by Plaintiffs on June 2, 2020. In it, Plaintiffs complain of the following conduct, all of which they argue is sanctionable:

- Attempting to "buy off" Plaintiff, Tammy Kidwell, by giving her an $868 check for "missing overtime hours" after this litigation had begun;

- Failing three times to comply with this Court's July 25, 2018 minute entry (rec. doc. 46);

- Failing to timely search the emails of agreed-to custodians, omitting certain of those custodians from their ultimate search, and omitting agreed-upon search terms from that search;

- Attempting to dissuade potential class members from joining the lawsuit;

- Repeatedly avoiding properly noticed depositions of their principals by terminating counsel and lying about the deponents' whereabouts; and,

---

[1] The disputed production consisted of so-called "b-50" payroll reports in a particular format requested by Plaintiffs' counsel and previously agreed to by prior defense counsel.

[2] The Court convened that hearing without allowing Plaintiffs an opportunity to file a responsive brief.

- Failing to timely produce usable time-and-pay records.

(Rec. doc. 361).

Defendants responded to this motion by pointing out that most of the allegedly sanctionable conduct was unrelated to and predated the discovery skirmish concerning the b-50 reports and that many of the alleged transgressions occurred while Defendants were represented by one of their three prior law firms.  (Rec. doc. 369).  Specifically, counsel argued that, as to the format of production for the b-50 reports, counsel were unaware of any agreement by prior counsel to re-produce those reports in a different format and that they had since made such a production.  Thus, they claim the motion to compel that they failed to oppose was "arguably unnecessary."  (*Id.*).

They go on to argue that the remaining instances of allegedly sanctionable conduct presented in Plaintiffs' motion are not properly subject of a motion for sanctions because: they (1) do not relate to the motion to compel that precipitated the motion for sanctions, (2) occurred years earlier and involved prior counsel, (3) were subject of prior requests for sanctions that were denied, and/or (4) are not discovery related.  (*Id.*).

Plaintiffs filed a reply memorandum expressing disbelief that Defense counsel could argue they were unaware of Defendants' prior agreements to re-produce the b-50 reports and explaining in some detail why that argument is not worthy of belief.  (Rec. doc. 384).  They go on to explain that the other transgressions pointed out in their motion should be grist for the mill in a "totality-of-the-circumstances" consideration by the Court of Plaintiffs' sanctions motion.  (*Id.*).

As noted above, the Court is all too familiar with the ridiculous procedural history of this case when it comes to Defendants' responses to discovery.  I have presided over more

3

hearings and status conferences in this case than in any other single case since taking the bench.  Considering the tortured history of the case and after thoroughly considering the briefing and exhibits associated with Plaintiffs' first pending motion for sanctions, I find that the motion has merit and will grant it, albeit partially, for the following reasons and in the following particulars.

Federal Rule of Civil Procedure 37(a)(5) provides that, when a motion to compel is granted, the Court:

> must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees. But the court must not order this payment if:
> (i) the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action;
> (ii) the opposing party's nondisclosure, response, or objection was substantially justified; or
> (iii) other circumstances make an award of expenses unjust.

Fed. R. Civ. P. 37(a)(5)(A)

Here, the Court already determined that sanctions were warranted in its order of March 4, 2020, stating that Plaintiffs "may brief the Court on the type and amount of sanctions that may be properly imposed in this matter commensurate with the extent of Defendants' compliance with this order."  (Rec. doc. 332).  Notably, that order required compliance by March 23, 2020.  As noted above, for various reasons, Defendants did not comply with that order until at least April 16, 2020.  (Rec. doc. 361-1).

Defendants' counsel's protestations that there were unaware of any agreement between the parties concerning the production format of the b-50 reports is both unconvincing and not relevant to their <u>clients'</u> obligations to conduct discovery in good faith.

Importantly, Plaintiffs' counsel had been explaining the nature of the agreement and asking for documents as far back as November of 2019; the Court itself discussed the matter repeatedly in status conferences with counsel for <u>all</u> parties.  It is not credible for counsel to suggest in their clients' defense that they were unaware of any such agreement – when they took over the case as Defendants' fourth law firm they were charged with doing more than sticking their heads in the sand about their new clients' extant discovery obligations and agreements.[3]  But that is exactly what they did.

The Defendants in this case have a documented history of taking extraordinary steps to avoid discovery, particularly depositions.  As will be discussed below, for instance, the saga of Rule 30(b)(6) depositions in this case has been nothing short of depressing.  Whether they are serially firing counsel, showing up unprepared for their depositions, sending unprepared employees to testify, or pretending not to understand the Courts' orders or agreements their own counsel have made, the Defendants' principals have seriously retarded the progress of this case.  Their failure to produce the re-formatted b-50 reports as agreed (and ordered) was yet another example of their dilatory conduct.

For that very reason, the Court finds that Defendants should be sanctioned for failing to produce the documents in a timely fashion and for causing unnecessary motion practice, up to and including the pending first motion for sanctions.  Their sanctionable conduct in this arena includes: (1) failing for months to produce the documents requested by Plaintiffs and agreed to by their counsel, thereby necessitating the filing of a motion to compel; (2) claiming not to have received the pre-motion correspondence sent by Plaintiffs' counsel

---

[3]  This is particularly true given the half dozen or so times Plaintiffs' counsel informed them of said obligations and agreements.

addressing that failure when the record reveals they undoubtedly did receive that correspondence; (3) and failing (even if through neglect) to respond to that motion to compel, necessitating a round of motion practice aimed at having the Court reconsider its order granting that motion.

The Court further finds that the appropriate sanction for this discovery misconduct is an award of attorneys' fees to Plaintiffs for the work associated with the filing of the (unopposed) motion to compel, their correspondence, and attendance at a status conference on Defendants' motion for reconsideration, and the filing of the present first motion for sanctions. After thorough consideration of the nature and scope of these pleadings, the Court finds that an attorneys' fee award in the amount of $6,000 is reasonable and appropriate and will order Defendants to remit such a payment to counsel for Plaintiffs no later than November 16, 2020.

Notably, this is the third time the Court has issued a monetary sanction against Defendants. Alas, it will not be the last.

## II.     The Second Motion for Sanctions

Plaintiffs' second motion for sanctions arises out of a recent (second) Rule 30(b)(6) deposition that the Court ordered to go forward on three topics. (Rec. doc. 456). In response to a motion to compel (rec. doc. 418) filed by Plaintiffs after Defendants' corporate designee was unable to answer questions on three topics in the deposition notice (topics 3, 6, and 7), the Court ordered:

> The Court finds that the corporate designee presented by Defendants was unprepared to testify as a knowledgeable witness pursuant to Rule 30(b)(6) as to topics 3, 6, and 7 of the deposition notice. Defendants' justifications for presenting a witness woefully unprepared to testify on these topics ring hollow. . . .

> The Plaintiffs shall be allowed to reconvene the 30(b)(6) deposition on topics 3, 6, and 7, to include inquiry into the previous Department of Labor ("DOL") investigation referenced in Plaintiffs' motion papers. Defendants may avoid this deposition if they agree, no later than August 25, 2020 to stipulate to: (1) the accuracy of the information in the DOL findings and narrative reports, and (2) the admissibility of that information and related documents at trial.
>
> (<em>Id.</em>).

In that order, the Court assessed a monetary sanction of $1,500 in attorneys' fees for Defendants' initial failure to present a witness with any capability of responding to topics 3, 6, and 7.  (*Id.*).

Remarkably, Plaintiffs now call to the Courts' attention that the individual designated for the second deposition ordered by the Court was, like the first, unprepared to testify about those topics because he had spoken to no one and reviewed no documents in advance of the deposition.  (Rec. doc. 496-1).  They attach deposition transcripts in which the deponent, Jhonathan Abrego ("Abrego"), admitted to the following:

- He has worked for the Defendants since 2015.  (Rec. doc. 496-4 at p. 7).

- He has worked only as a restaurant general manager or assistant manager – never in management above a single-restaurant level .  (*Id.* at pp. 5-7).

- He spoke to no one with personal knowledge and reviewed no documents to prepare to testify about topics 3, 6, and 7.  (*Id.* at pp. 7-8).

- He could not provide testimony about any of the 30 compensation-related complaints listed in Defendants' interrogatory responses (which were attached to the deposition notice regarding topic 3).  (*Id.* at pp. 9-15).

- He could not testify concerning any of the prior wage-and-hour lawsuits filed against the Defendants, which clearly fell within the scope of the deposition as ordered by the Court.

Finally, Plaintiffs point out that Abrego testified completely at odds with the facts concerning the Department of Labor ("DOL") findings in its prior investigations of Defendants' companies. Plaintiffs point out that Abrego testified that the DOL had concluded that Defendants had not violated the Fair Labor Standards Act in any way, when it is clear from the DOL documents and findings that the Department found dozens of violations. (Rec. doc. 496-5).

In trying to fend off the inevitable, Defendants predictably plead innocent mistake and good faith. This is all more of the same – tiresome arguments in defense of the indefensible. Recalling that this deposition was conducted specifically pursuant to this Court's order, here are Defendants' justifications for ignoring that order.

First, they argue that a particular stipulation reached between the parties insulates Defendants from presenting a witness knowledgeable on the three aforementioned topics, notwithstanding a specific order directing Defendants to present a knowledgeable witness. This argument borders on farcical, considering that I already rejected that very argument in the order directing the deposition to proceed and Defendants failed to object to that order. (Rec. doc. 456). To be clear, if counsel thinks or hopes that a post-order stipulation relieves their client from complying with a court order, counsel should raise that argument with the Court before they decide to violate that order. This should be common sense. Here, though, Defendants persist in arguing that this stipulation has a much more far-reaching effect than Plaintiffs do.

8

Whatever Defendants believe the effect of that stipulation should be, they cannot assume they are right and then proceed to violate an un-appealed discovery order, while just hoping for the best.

Next, Defendants suggest that their designee "did provide answers" to the relevant questions. (Rec. doc. 498 at p. 3). Well, I suppose "I don't know" is technically an answer, but it hardly demonstrates compliance with Rule 30(b)(6) and my order that Defendants provide a <u>knowledgeable</u> witness. I have now been forced to review the entire transcript of Abrego's testimony and it is perfectly clear he had no real idea what he was talking about when it came to the topics of this second deposition, which I must I assume is not his fault. He appears to be the latest sacrificial employee sent to the deposition room to say "I don't know" over and over again.[4]

 Suffice to say my review of the transcript easily establishes to my satisfaction that, while Abrego may have "provide[d] answers" to Plaintiffs' counsel's questions, they were nowhere near what was required by Rule 30 and my order.

Next, Defendants suggest that they were not in bad faith in perpetuating this fiasco. I disagree.

---

[4] Defendants required Tina Cao to respond to discovery requests involving issues that occurred more than four years before she was employed by Defendants - and verify them under penalty of perjury – and then be deposed about those responses. Her deposition testimony made clear that she was, to quote Plaintiffs, "thrown to the wolves" in this litigation. (Rec. doc. 113-5 at pp. 95, 120-121). Then there was the corporate designee for the first 30(b)(6) deposition, Dhiya Esmail, who testified that he had minimal involvement with the Ruby companies' operations before 2019. (Rec. doc. 418-3 at p. 10). He did not speak with any employees or other persons associated with the corporate Defendants (other than counsel) to obtain the knowledge necessary to testify as a 30(b)(6) deponent, nor did he review any documents to prepare for the deposition. (Id. at pp. 6-9). It was his inability to answer any questions on topics 3, 6, and 7 that precipitated this Court's order directing Defendants to provide a knowledgeable witness on those topics and awarding sanctions to Plaintiffs in the form of attorneys' fees for presenting an unprepared witness at the first corporate deposition. (Rec. doc. 456).

The procedural history surrounding Plaintiffs' efforts to obtain Rule 30(b)(6) depositions and meaningful depositions of the principals, the Esmails, is, to say the least, tortured.  That history, replete throughout this record and including developments brought to the Court's attention in this motion, establish a pattern of avoidance and dereliction by Defendants of their most basic discovery obligations.  This recent Rule 30(b)(6) episode is just the latest chapter.  Unfortunately, it appears that no amount of forbearance by this Court can reel Defendants into the place they have needed to be in from the start – nor has the procession of new lawyers advising them been able to convince Defendants of the importance of complying with the rules.[5]

I can only hope the ruling on these motions once and for all changes that.

### III.     The Relevant Law on Sanctions

There are a number of mechanisms by which district courts exercise sanction powers, including the Federal Rules of Civil Procedure (through Rules 11, 26, 30, and/or 37); 28 U.S.C. §1927; and the inherent power of the courts to manage their own proceedings and to control the conduct of those who appear before them.  Regardless of the source, it is widely accepted that the primary purpose of sanctions is to deter frivolous litigation and abusive tactics.  Sanctions seek to deter both the culpable attorney and members of the bar in general. *See, e.g., Pavelic & LeFlore v. Marvel Entertainment Group*, 493 U.S. 120, 126-27 (1989) (the primary purpose of Rule 11 is deterrence, not compensation); *Fred A. Smith Lumber Co. v. Edidin,* 845 F.2d 750, 752 (7th Cir. 1988)("the most important purpose of Rule 11 sanctions is to deter frivolous litigation and the abusive practices of attorneys"); Gregory P. Joseph,

---

[5]  It is worth mentioning here that fully a year ago, the District Judge weighed in on Defendants' delay tactics and, while declining to issue a harsh, dispositive sanction at that time, did go so far as to assess a monetary sanction against Defendants for those tactics.  (Rec. doc. 288).

*Sanctions: The Federal Law of Litigation Abuse* §47(A) (2d ed.) (the purpose of Rule 37 is four-fold: "(1) penalizing the culpable party or attorney; (2) deterring others from engaging in similar conduct; (3) compensating the court and other parties for the expense caused by the abusive conduct; and (4) compelling discovery"); Id. at §20 (the purpose of 28 U.S.C. §1927 is to deter unnecessary delays in litigation).

Whether a court wields its sanction powers under the Federal Rules, 28 U.S.C. §1927, or its inherent power, it does so at its "broad discretion." *Topalian v. Ehrman*, 3 F.3d 931, 934 (5th Cir. 1993). "The discretion vested in the trial court is granted so its thoughtful exercise will carry out the educational and deterrent functions of the rule." *Jennings v. Joshua I.S.D.*, 948 F.2d 194, 199 (5th Cir. 1991), *cert. denied*, 504 U.S. 956 (1992).

The Court finds in the present matter that Rule 37 and the cases interpreting its sanctions provisions provide the rules of decision.

Rule 37(b)(2) provides in relevant part:

> (2) *Sanctions Sought in the District Where the Action Is Pending.*
> (A) *For Not Obeying a Discovery Order*. If a party or a party's officer, director, or managing agent—or a witness designated under Rule 30(b)(6) or 31(a)(4)—fails to obey an order to provide or permit discovery, including an order under Rule 26(f), 35, or 37(a), the court where the action is pending may issue further just orders. They may include the following:
> > (i) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;
> > (ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;
> > (iii) striking pleadings in whole or in part;
> > (iv) staying further proceedings until the order is obeyed;
> > (v) dismissing the action or proceeding in whole or in part;
> > (vi) rendering a default judgment against the disobedient party; or

> (vii) treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination.
>
> . . . .
>
> (C) *Payment of Expenses.*  Instead of or in addition to the orders above, the court must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust.
>
> Fed. R. Civ. P. 37(b)(2).

In the present motion, Plaintiffs ask the Court to assess the most draconian of the Rule 37 sanctions.  They ask the Court to "strike the Defendants' pleadings, including their affirmative defenses, pursuant to its authority under Rule 37(b)(2)(A), or to enter a default judgment against them."  (Rec doc. 496-1 at p. 9).  Failing the imposition of such sanctions, Plaintiffs suggest an alternative, which the Court will discuss below after first addressing the request for dispositive sanctions.

Sanctions that strike pleadings and defenses or result in the imposition of a default judgment are the most severe provided for under Rule 37 and are reserved for the most egregious circumstances.  This sort of dispositive remedy is reserved exclusively for clear records of contumacious and continuing discovery misconduct or delay, ordinarily involving stubborn resistance to authority by failure to comply with multiple court orders.  *Doe v. Am. Airlines*, 283 Fed.Appx. 289, 291 (5th Cir. 2008); *Davis v. Auto Club Family Ins. Co.*, No. 07-CV-8545, 2008 WL 5110619 at *1 (E.D. La. Dec. 2, 2008) (Vance, J.) (citing *Fed. Deposit Ins. Corp. v. Conner*, 20 F.3d 1376, 1380-81 (5th Cir. 1994); *E.E.O.C. v. Gen. Dynamics Corp.*, 999 F.2d 113, 119 (5th Cir. 1993); and *Batson v. Neal Spelce Assocs., Inc.,* 765 F.2d 511, 515 (5th Cir. 1985)). "[I]t is not a party's negligence–regardless of how careless, inconsiderate, or understandably exasperating–that makes conduct contumacious; instead it is the stubborn resistance to

12

authority which justifies a dismissal with prejudice" of a claim or affirmative defense. *Brown v. Oil States Skagit Smatco*, 664 F.3d 71, 77 (5th Cir. 2011) (quoting *McNeal v. Papasan*, 842 F.2d 787, 792 (5th Cir. 1988)) (internal quotation omitted).

There is a strong argument to be made in this case – and no doubt Plaintiffs' counsel firmly believe that we have reached this point – that Defendants' conduct has been contumacious and represents a stubborn resistance to authority.  It is a very close call for the Court, but, guided by the ample caselaw teaching how rarely such sanctions should be deployed, I will not recommend to the District Judge that he impose what would be case-dispositive sanctions at this point.  That being said, Defendants' ongoing disruptive and dilatory conduct must be met with serious consequences.

The alternative sanction sought by Plaintiffs is a request that the Court enter an order "(i) directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims; . . ."  Fed. R. Civ. P. 37(b)(2)(i).  Specifically, Plaintiffs request in the alternative that the following sanctions are appropriate:

- The Court should deem admitted all information and allegations in Exhibit 7 to the 30(b)(6) deposition, including, but not limited to: (1) the findings of the Department of Labor and the agency's observations in their narrative reports, (2) the allegations in the *Bourg* lawsuit that the corporate defendants did not give notice of the tip credit and manipulated server's tip amounts to make it appear as though they were earning minimum wage, and (3) the FLSA violations alleged in the *Van Cott* FLSA lawsuit, and (4) the allegations in the thirty (30) employee claims/complaints that the corporate designee was unable to answer.  This sanction should also include that the foregoing information shall be admissible at trial and that Defendants shall be prohibited from presenting any evidence attempting to contest the matters deemed admitted (along with an appropriate instruction to the jury to be included in the Court's jury instructions).

- The Court should require Defendants to pay the attorney's fees, costs, and expenses associated with both Rule 30(b)(6) depositions, including the time spent preparing for the depositions and for all motion practice related to same.

(Rec. doc. 496-1 at p. 10).

The Court will address the request that certain information be deemed admitted first. I have closely reviewed the transcript of the two failed corporate depositions as they pertain to the allegations Plaintiffs want the Court to deem admitted.  There is no doubt whatsoever that Plaintiffs have diligently attempted to have Defendants address these allegations on the merits for months, if not longer, and these efforts have been stymied at every possible turn by Defendants.  Most recently, Defendants brazenly went so far as to ignore a Court order on this very topic and to present, for a second time, a designee with no personal knowledge of the matters within the scope of the deposition notice who made no effort to prepare to testify by reviewing documents or speaking with actual, knowledgeable persons.

Because the relief requested above is narrowly tailored by addressing the specific allegations and findings that were the subject of two failed corporate depositions[6] and is proportional to the ongoing and egregious discovery misconduct described above, I find it is entirely appropriate to grant Plaintiffs' request as a sanction for that misconduct.  I will recommend to the District Judge that such relief be granted.

Before moving to the request for fees and costs associated with the two failed depositions, it is important to address two of Defendants' additional arguments against imposition of the sort of sanction I am recommending here.

---

[6] Defendants admit in their opposition memorandum:  "Admittedly, the defendants' designee was unable to provide answers to questions regarding the thirty (30) employee claims/complaints regarding compensation and the *Bourg* and *Van Cott* lawsuits."  (Rec. doc. 498).  One is left to wonder how, after years of litigation and discovery disputes in this case, Defendants can present a witness admittedly unable to answer core questions in a corporate deposition ordered by the Court, yet continue to maintain they are litigating in good faith.

Quite incredibly, after twice failing to produce a knowledgeable deponent on topics 3, 6, and 7 – and blatantly violating a court order in the meantime – Defendants suggest the Court should give them yet another chance to make this right by allowing for a <u>third</u> corporate deposition on these topics.  (Rec. doc. 498 at p. 4).

The old saying "insanity is doing the same thing over and over again and expecting a different result" is commonly mis-attributed to Albert Einstein, which is fine because I don't have to be Einstein to know what a bad idea it would be to allow Defendants to continue playing games with the rules, the Court, and their opponents without consequences.  To allow this fiasco to continue as Defendants suggest I should would be both foolish and patently unfair to Plaintiffs.

Finally, Defendants make this bizarre argument against the imposition of sanctions: "Typically, Rule 37(b) sanctions are not available until the court has issued a specific discovery order so it is clear that the offending party has been alerted to what is required and the potential seriousness of non-compliance."  (*Id.* at 5).  I am honestly dumfounded by this statement.  I <u>did</u> issue such a "specific order."  I <u>did</u> make clear what was required of the "offending party."  I <u>did</u> make clear the "potential seriousness of non-compliance."[7]  In fact, I actually sanctioned Defendants in that very same order for their previous non-compliance.  (Rec. doc. 456).  I honestly cannot fathom the thinking behind this statement, but that makes no difference in the end because despite what they suggest by that statement, this motion is, in fact, about Defendants' clear violation of a discovery order issued by this Court.

---

[7] Not that the Court should have to educate a litigant of the undesirable consequences of violating court orders – that's why they have lawyers after all.

Turning to Plaintiffs' request for the additional sanction of attorneys' fees and costs, for the reasons stated above and consistent with the other three occasions on which attorneys' fees have been awarded against Defendants for their misconduct in this case, I will award them here:  Plaintiffs request fees and costs for both Rule 30(b)(6) depositions and all motion practice related to them.  (Rec. doc. 496-1 at p. 10).  As noted above, though, I have already awarded fees in connection with the first deposition and motion.  (Rec. doc. 456). The question, then, is what is an appropriate award of reasonable fees and costs associated with the second, failed deposition and this motion practice.  I answer this question in two parts.

First, I will assess against Defendants what I believe to be a reasonable fee for this work, which upon consideration I believe to be $5,000.  As for the costs of the second deposition, Plaintiffs have not submitted proof of those costs but I will allow them to do so. Plaintiffs' counsel will submit that figure and proof supporting it to Defendants' counsel.  If the parties cannot agree that Plaintiffs are entitled to recover that figure pursuant to this order, the parties may submit that dispute to me.  That effort will also be compensable to the prevailing party so I urge the attorneys in the case to act reasonably and make their best efforts to resolve that part of this dispute among themselves.

Finally, in an effort to fully implement the deterrent purpose of Rule 37 sanctions, I will make an additional award to Plaintiffs' counsel that represents the amount of time the <u>Court</u> has had to expend (and waste) dealing with Defendants' serial violations of the Rules and orders of this Court.

The matter of the "value" of a federal court's time for purposes of assessing sanctions against a litigant for wasting that time has been the subject of discussion in a number of

courts over the years.  A 1982 study sponsored by the Rand Corporation Institute for Civil Justice concluded that a single hour spent by a federal judge in a tort case cost the government approximately $600 in 1982.  *See* Levin & Colliers, *Containing the Cost of Litigation*, 37 Rutgers L. Rev. 219, 219–22 (1985).  That calculation has been approved and adopted by numerous courts since. *See, e.g., Lapin v. U.S.*, 118 F.R.D. 632, 645-46 (D. Hawaii 1987); *Thiel v. First Federal Savings & Loan Ass'n of Marion*, 646 F.Supp. 592, 598 (N.D. Ind. 1986), *aff'd in part dis'd in part*, 828 F.2d 21 (7th Cir. 1987)(imposing a sanction of $3,600 based upon $600 per hour); *Dyson v. Sposeep*, 637 F.Supp. 616, 624 (N.D. Ind. 1986)(using the $600/hour formula and stating it would also be used in the future); *Advo Sys., Inc. v. Walters*, 110 F.R.D. 426, 433 (E.D. Mich. 1986)(noting that the court cannot tolerate an unnecessary drain on judicial resources caused by actions without merit and that in future cases the $600 per hour formula would be used to impose sanctions).

With the passage of time, other courts, including this one, have continued to employ this formula, adjusting the hourly rate for inflation.  *See, e.g., Nogess v. Poydras Center, LLC*, No. 16-CV-15227, 2017 WL 396307 at *14-15 (E.D. La); *Seneca Res. Corp. v. Moody*, 135 B.R. 260, 261 (Bkptcy. S.D. Tex. 1991)(imposing Rule 11 sanctions at $890 per hour); *Enright v. Auto–Owners Ins. Co.*, 2 F.Supp.2d 1072, 1076 n. 2 (N.D. Ind. 1998)(adjusting the rate to $900 per hour); *International Union of Electronic, Electrical, Salaried, Machine & Furniture Workers (AFL–CIO), Local 84907 v. Visteon Systems, LLC*, No. 06-CV-0275, 2007 WL 647499 (S.D. Ind. 2007)(same).

In a 2012 decision citing to the foregoing authority, a court employed the United States Department of Labor, Bureau of Labor Statistics, Consumer Price Index Inflation Calculator ("CPI Calculator") to calculate that the $600-per-hour rate in 1982 should be

adjusted to $1,430.58 in 2012. *In re Kentwood Pharmacy, L.L.C.*, 475 B.R. 602, 610-12 (Bkptcy. W.D. Mich. 2012)(citing CPI calculator, found on the web at bls.gov/data/inflation_calculator.htm). This Court has employed this method to arrive at appropriate sanctions for wasting the Court's time. *See Nogess* 2017 WL 396307 at *14-15.

This Court finds the foregoing process and reasoning appropriate here. Employing the CPI Calculator, the Court finds that an hour of its time in 2020 is worth $1,650 (rounded down from $1,656.08).

Although the Court has expended substantially more than six hours on the extensive discovery litigation occasioned by Defendants' recalcitrance and misconduct subject of these motions, it will assess a sanction in addition to that described above equivalent to six hours of its time wasted in this matter. That figure is $9,900.

## IV. Conclusion

Litigation is not a game, it is a search for the truth and an effort to obtain justice. *See Sims v. ANR*, 77 F.3d 846, 849 (5th Cir. 1996); *Hall v. Freese*, 735 F.2d 956, 961-62 (5th Cir. 1984); *Bintliff v. U.S.*, 462 F.2d 403, 407 (5th Cir. 1972). Defendants have treated this lawsuit as a game from the start – in addition to all of the discovery misconduct discussed here already, Defendants have demonstrated their disdain for these proceedings and the rules that govern them through, for instance: (1) their apparent efforts to coerce the named Plaintiff into quitting the lawsuit by writing her check after suit was filed for $868.00 with the words "missing overtime hours" in the memo line (rec. doc. 361-5) and (2) Dhiya Esmail's[8] direct communication with a Plaintiff in violation of the Court's protective order

---

[88] This is the same Dhiya Esmail whose inability to testify about certain topics in the first Rule 30(b)(6) deposition was the genesis of this very motion. *See* note 3, *supra*.

(rec. doc. 81), telling her "Ur trying to join a lawsuit against us you have no case 😊." (Rec. doc. 361-1).

It also obviously bears mention that this is fourth time in this litigation that Defendants are being sanctioned. At some point the Court has to bear down on the deterrent purpose of discovery sanctions and decide if that deterrent purpose is to be honored, enough has to be enough.

That time has arrived.

Consistent with the reasons set forth above, the two motions for sanctions (rec. docs. 361, 496) are granted. The undersigned hereby awards against Defendants the following monetary sanctions: (1) $6,000 payable to Plaintiffs' counsel for the filing of the (unopposed) motion to compel, their correspondence and attendance at a status conference regarding Defendants' motion for reconsideration, and the filing of the present first motion for sanctions; (2) $5,000 payable to Plaintiffs' counsel for the filing of the second motion to compel and fees associated with the failed second Rule 30(b)(6) deposition of the Plaintiffs; (3) $9,900 payable to Plaintiffs' counsel consistent with the deterrent purpose of Rule 37, representing six hours of the Court's time wasted refereeing disputes that never should have arisen; and (4) costs for the second Rule 30(b)(6) deposition to be determined consistent with this opinion as set forth above.

Additionally, the undersigned recommends to the District Judge the following additional sanction be assessed against Defendants for the blatant violation of this Court's order (rec. doc. 456) and the misconduct that preceded it:

It is recommended that the District Judge deem admitted all information and allegations in Exhibit 7 to the Rule 30(b)(6) deposition, including, but not limited to: (1) the

19

findings of the Department of Labor and the agency's observations in their narrative reports, (2) the allegations in the *Bourg* lawsuit that the corporate defendants did not give notice of the tip credit and manipulated server's tip amounts to make it appear as though they were earning minimum wage, (3) the FLSA violations alleged in the *Van Cott* FLSA lawsuit, and (4) the allegations in the thirty (30) employee claims/complaints that the corporate designee was unable to answer.  This sanction should also include that the foregoing information shall be admissible at trial and that Defendants shall be prohibited from presenting any evidence attempting to contest the matters deemed admitted (along with an appropriate instruction to the jury to be included in the Court's jury instructions).

I sincerely hope and expect that these sanctions will resonate with Defendants and bring them in line with the rules and their obligations to litigate this matter in good faith.  I expect any remaining discovery to proceed apace and without additional issues.

New Orleans, Louisiana, this __2nd__ day of _____November_____, 2020.

MICHAEL B. NORTH
UNITED STATES MAGISTRATE JUDGE